**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

VALLEY LO CLUB ASSOCIATION, INC. d/b/a
VALLEY LO CLUB, and all others similarly
situated,

             Plaintiffs,

                 v.

THE CINCINNATI INSURANCE COMPANY,

             Defendant.

Court No.

***JURY TRIAL DEMANDED***

## COMPLAINT AT LAW

Plaintiff, VALLEY LO CLUB ASSOCIATION, INC., doing business as "VALLEY LO
CLUB," by and through its attorneys, DUNCAN LAW GROUP, LLC and ESBROOK LAW,
LLC, complaining of the Defendant, THE CINCINNATI INSURANCE COMPANY (hereinafter
"Cincinnati Insurance"), for its Complaint at Law, pleading in the alternative, on behalf of itself
and all others similarly situated, states:

### Nature of the Action

1.    This action arises out of Cincinnati Insurance's failure to provide insurance
coverage for the business income Plaintiff lost because of the ongoing Coronavirus (COVID-19)
pandemic.

2.    Plaintiff brings this action for declaratory relief and breach of contract on behalf of
itself and all other similarly situated Illinois places of public amusement[1] and Illinois businesses
that offer food or beverages for on-premises consumption.

---

[1] "Places of public amusement" means "places of public amusement" as the term is used in Illinois Governor
J.B. Pritzker's Executive Order 2020-10. Executive Order 2020-10 (2020).

## The Parties

3.    Plaintiff, Valley Lo Club Association, Inc., doing business as "Valley Lo Club," is an Illinois corporation with its principal place of business at 2200 Tanglewood Drive, Glenview, Illinois 60025.

4.    At all times mentioned herein, Plaintiff owned and operated Valley Lo Club, a country club located at 2200 Tanglewood Drive, Glenview, Illinois 60025.

5.    At all times mentioned herein, Valley Lo Club contained various amenities, including but not limited to an 18-hole golf course, a pro shop, a fitness center, locker rooms, tennis courts, paddle tennis courts, an indoor swimming pool, youth play areas, a member conference room, and exercise studio(s).

6.    At all times mentioned herein, Valley Lo Club also contained several on-premises restaurants/dining areas—consisting of various real and personal property like tables, chairs, utensils, and dispensers (among other things)—for members wishing to dine at the club.

7.    Defendant, Cincinnati Insurance, is a stock insurance company organized under the laws of the State of Ohio, with its principal place of business in Fairfield, Ohio.

8.    At all times mentioned herein, Defendant, Cincinnati Insurance, was licensed to do business in the State of Illinois, selling property and casualty insurance policies to places of public amusement, bars, restaurants, caterers, banquet halls, and other businesses that offer food and/or beverages for on-premises consumption.

## Jurisdiction and Venue

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant; there are more than 100 members of the Class; and

upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

10.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity among the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

11.     This Court has personal jurisdiction over Cincinnati Insurance pursuant to Illinois's long-arm statute, 735 ILCS 5/2-209, because this complaint concerns: (1) one or more contracts Cincinnati Insurance made to insure property and/or risk in Illinois, (2) business that Cincinnati Insurance transacted within Illinois, and (3) one or more contracts and/or promises Cincinnati Insurance made that are substantially connected with Illinois. 735 ILCS 5/2-209(a)(1), (4), (7).

12.     Additionally, because this action presents an actual controversy within this Court's jurisdiction, this Court may declare the legal rights and obligations of the parties hereto under 28 U.S.C. § 2201.

13.     Venue is appropriate because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District of Illinois and Cincinnati Insurance "resides" in the Northern District of Illinois. 28 U.S.C. § 1391.

## Factual Allegations

### *Coronavirus (COVID-19) and Illinois's Response*

14.     For years, if not decades, the Center for Disease Control and the World Health Organization have been warning about the possibility of an airborne virus that could cause a worldwide pandemic.

15.     On December 31, 2019, Chinese health authorities notified the World Health Organization about a cluster of pneumonia of unknown etiology in Wuhan, China. Christian L. Althaus and Julien Riou, *Pattern of early human-to-human transmission of Wuhan 2019 novel*

*coronavirus (2019-nCoV), December 2019 to January 2020*, Eurosurveillance (Jan. 30, 2020), https://www.eurosurveillance.org/content/10.2807/1560-7917.ES.2020.25.4.2000058. A few days later, the same authorities identified a novel Coronavirus ("COVID-19") as the cause of the outbreak. *Id.*

16. Since its discovery, COVID-19—a highly contagious airborne virus—has spread rapidly around the globe, first appearing in the United States and Illinois in January 2020.

17. Since its arrival, COVID-19 has infected more than 3,761,362 people in the United States and more than 162,750 in the State of Illinois. Cases of Coronavirus Disease (COVID-19) in the U.S., Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited July 21, 2020).

18. Although a lot remains unknown about the manner in which COVID-19 spreads, COVID-19 is thought to spread mainly from person to person through respiratory droplets produced when an infected person coughs, sneezes, or talks. Frequently Asked Questions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Spread (last visited June 30, 2020). These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs. *Id.* Spread is more likely when people are in close contact with one another (within about 6 feet). *Id.*

19. When an infected person coughs, sneezes, or talks, the aforementioned respiratory droplets can also land on objects and surfaces around the person such as tables, doorknobs and handrails. Q&A on coronaviruses, World Health Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited June 30, 2020). People can become infected by touching these objects or surfaces, then touching their eyes, nose or mouth. *Id.*

20.     COVID-19 has been declared a pandemic by the World Health Organization.

21.     The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize bars and restaurants.

22.     In response to this pandemic, Federal and State authorities have mandated social distancing and limited the number of people that can gather in any setting.

23.     On March 16, 2020, in direct response to the COVID-19 outbreak, and pursuant to the Illinois Emergency Management Agency Act, 20 ILCS 3305/1, *et seq.*, Illinois Governor J.B. Pritzker issued Executive Order 2020-07, ordering "all businesses in the State of Illinois that offer food or beverages for on-premises consumption—including restaurants, bars, grocery stores, and food halls—[to] suspend service for and … not permit on-premises consumption." Executive Order 2020-07 (2020). Although Executive Order 2020-07 permitted such businesses to serve food and beverages for off-premises consumption, it mandated that they ensure they have an environment where patrons purchasing food or beverages "maintain adequate social distancing." *Id.* Executive Order 2020-07 further prohibited public and private gatherings of 50 or more people, including "civic, public leisure, … [and] sporting events" at "venues such as fitness centers/health clubs, bowling alleys, private clubs, and theatres." *Id.*

24.     On March 20, 2020, Governor Pritzker issued Executive Order 2020-10, (1) directing Illinois residents to stay in their homes except when performing "essential" activities, (2) prohibiting gatherings of 10 or more people, (3) requiring "non-essential" businesses to cease operations, and (4) extending Executive Order 2020-07's prohibition of on-premises dining through April 7, 2020. Executive Order 2020-10 (2020). Executive Order 2020-10 further stated that "[a]ll places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos,

museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and **country clubs or social clubs** shall be closed to the public." *Id.* (**emphasis added**).

25.     On April 1, 2020, Governor Pritzker issued Executive Order 2020-18, extending Executive Order 2020-10 (in its entirety) and Executive Order 2020-07's prohibition of on-premises dining through April 30, 2020. Executive Order 2020-18 (2020).

26.     On April 30, 2020, Governor Pritzker issued Executive Order 2020-32, ordering "all places of public amusement … including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and **country clubs or social clubs**" to remain "closed to the public." Executive Order 2020-32 (2020) (**emphasis added**).

27.     On April 30, 2020, Governor Pritzker also issued Executive Order 2020-33, further extending Executive Order 2020-07's prohibition of on-premises dining through May 29, 2020. Executive Order 2020-33 (2020).

28.     Executive Orders 2020-07, 2020-10, 2020-18, 2020-32, and 2020-33 are not laws or ordinances.

29.     Since March 16, 2020, countless Illinois amusement, bar, country club and restaurant operators have made claims under their property and casualty insurance policies for the business income they lost as a result of the COVID-19-related Executive Orders.

30.     Insurers, including Cincinnati Insurance, have denied nearly every claim for lost business income—taking the outrageous position that their insureds have not suffered a "direct physical loss" to their property, which insurers like Cincinnati Insurance claim is a prerequisite for

coverage.

*Plaintiff's All-Risk Insurance Policy and "Business Income" Claim*

31.     In 2018, Cincinnati Insurance sold Plaintiff a commercial property and casualty insurance policy (Policy Number ETD 048 27 80) with an effective date of coverage of April 1, 2018. A copy of Policy Number ETD 048 27 80 is attached as "Exhibit A."

32.     At all times mentioned herein, Policy Number ETD 048 27 80 covered the country club/premises identified in Paragraph 4, above. Exhibit A at 12.

33.     Plaintiff has performed all of its obligations under Policy Number ETD 048 27 80, including but not limited to the payment of premiums and the timely reporting of claims. Therefore, Policy Number ETD 048 27 80 has been in effect since April 1, 2018.

34.     Policy Number ETD 048 27 80 includes "Business Income" coverage and consists of various policy forms, including but not limited to form number "FM 101 05 16"—called the "Building and Personal Property Coverage Form (Including Special Causes of Loss)" (hereinafter the "Building and Personal Property Coverage Form")—and form number "FA 213 IL 05 16"—called the "Business Income (and Extra Expense) Coverage Form – Illinois" (hereinafter the "Business Income Coverage Form"). *Id.* at 30-31, 126.

35.     Pursuant to the Building and Personal Property Coverage Form—an "all-risk" property insurance policy—Cincinnati Insurance agreed to "pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." *Id.* at 33.

36.     According to the Building and Personal Property Coverage Form, "Covered Causes of Loss means direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." *Id.* at 35.

37.     "Loss," as used in the Building and Personal Property Coverage Form, "means accidental physical loss or accidental physical damage." *Id.* at 68.

38.     Regarding "Business Income" coverage, the Building and Personal Property

Coverage Form states:

**(1) Business Income**

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

> With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

> **(a)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the "premises"; and

> **(b)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

*Id.* at 48-49.

39.     According to the Building and Personal Property Coverage Form:

> "Operations" means:

> a.  Your business activities occurring at the "premises"; and

> b.  The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

> …

> "Period of Restoration" means the period of time that:

    a.   Begins at the time of direct "loss".

    b.   Ends the earlier of:

        (1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new permanent location.

…

"Premises" means the Locations and Buildings described in the Declarations.

…

"Suspension" means:

    a.   The slowdown or cessation of your business activities; and

    b.   That a part or all of the "premises" is rendered untenantable.

*Id.* at 68-70.

40.    Regarding "Business Income" coverage, the Business Income Coverage Form states:

### 1. **Business Income**

    **a.**   We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open (or personal property in a vehicle or portable storage unit), the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

**b.** With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

**(1)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

**(2)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

*Id.* at 126.

41.    According to the Business Income Coverage Form:

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in [the Building and Personal Property Coverage Form].

…

"Loss" means accidental physical loss or accidental physical damage.

…

"Operations" means:

a.   Your business activities occurring at the "premises"; and

b.   The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

…

"Period of Restoration" means the period of time that:

a.   Begins at the time of direct "loss".

b. Ends the earlier of:

　　　　(1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

　　　　(2) The date when business is resumed at a new permanent location.

　　…

　　"Premises" means the Locations and Buildings described in the Declarations.

　　…

　　"Suspension" means:

　　a. The slowdown or cessation of your business activities; and

　　b. That a part or all of the "premises" is rendered untenantable if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

*Id.* at 35, 127, 134.

　　42.　On March 15, 2020, Plaintiff was notified that an individual who tested positive for COVID-19 (the "Individual") dined at the Valley Lo Club on March 5, 6 and 7, 2020. The Individual also used a golf simulator in the Valley Lo Club's pro shop on March 7. Further investigation revealed that members of the Individual's immediate family utilized the club's facilities (including the paddle tennis courts, conference room, pool and locker room) on March 3, 9, 12 and 14, 2020.

　　43.　Plaintiff immediately ceased Valley Lo Club's operations after learning of the Individual's COVID-19 diagnosis and club visits.

　　44.　On March 16, 2020, a Valley Lo Club employee who was working in the pro shop on March 7, 2020 began experiencing COVID-19 symptoms.

45.     In response to Executive Order 2020-07 and the COVID-19 exposure that occurred at the Valley Lo Club, Plaintiff closed the club (including but not limited to its restaurants/on-premises dining areas) to the public on March 16, 2020.

46.     Plaintiff began suffering an ongoing loss of business income upon the Valley Lo Club's March 16, 2020 closure.

47.     Plaintiff complied with Executive Order 2020-10, and the Valley Lo Club remained closed following Executive Order 2020-10's issuance on March 20, 2020.

48.     On April 1, 2020, Valley Lo Club began offering limited carry-out lunch and dinner service Wednesdays through Sundays.

49.     However, on April 8, 2020, a member of the Valley Lo Club's culinary staff tested positive for COVID-19, thus forcing the club to cease carry-out operations.

50.     On or about April 8, 2020, Plaintiff filed a claim with Cincinnati Insurance related to its lost business income.

51.     On or about May 27, 2020, Cincinnati Insurance denied coverage for the lost income Plaintiff suffered because of Executive Orders 2020-07 and 2020-10 (and any subsequent Executive Orders extending their prohibition of on-premises dining and/or closure of places of public amusement) and the COVID-19 exposure that occurred at the Valley Lo Club.

*Policy Number ETD 048 27 80's Lack of a "Virus Exclusion"*

52.     In 2006, Insurance Services Office, Inc. ("ISO")—an insurance advisory organization that  develops standard policy forms and files or lodges them with state insurance regulators—authored and sought widespread approval for an "Exclusion For Loss Due To Virus or Bacteria" endorsement (ISO form CP 01 40 07 06) in response to the severe acute respiratory syndrome (SARS) and avian influenza outbreaks of the late 1990's/early 2000's.

53.     Most insurers subsequently included ISO form CP 01 40 07 06 or a version thereof

in their "all-risk" commercial property insurance policies.

54.    Neither the Building and Personal Property Coverage Form nor the Business Income Coverage Form contain a "virus exclusion."

### Class Allegations

55.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of itself and the following classes of similarly situated businesses (collectively the "Classes"):

> **Bar and Restaurant Class:** All Illinois businesses offering food or beverages for on-premises consumption that: (1) are covered under Cincinnati Insurance insurance policies containing policy form number "FM 101 05 16," policy form number "FA 213 IL 05 16," and/or another policy form containing "Business Income" coverage identical to that found in policy form number "FM 101 05 16" or policy form number "FA 213 IL 05 16;" (2) have made a claim for lost "Business Income" as a result of Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining); and (3) been denied coverage.

> **Amusement Class:** All Illinois places of public amusement that (1) are covered under Cincinnati Insurance insurance policies containing policy form number "FM 101 05 16," policy form number "FA 213 IL 05 16," and/or another policy form containing "Business Income" coverage identical to that found in policy form number "FM 101 05 16" or policy form number "FA 213 IL 05 16;" (2) have made a claim for lost "Business Income" as a result of Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement); and (3) been denied coverage.

56.    Each class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of each class are geographically dispersed throughout the State of Illinois. While only Cincinnati Insurance knows the exact number of class members, Plaintiff believes there are hundreds and likely thousands of members in each class.

57.    Plaintiff's claims are typical of the claims of the other members of each class it seeks to represent because Plaintiff and all class members purchased coverage from Cincinnati

Insurance containing identical language regarding lost business income.

58.     Plaintiff will fully and adequately protect the interests of all members of each class. Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff has no interests which are adverse to or in conflict with other members of either class.

59.     The questions of law and fact common to the members of each class predominate over any questions that may affect only individual members.

60.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of each class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to each class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

61.     The interest of the members of each class in individually controlling the prosecution of separate actions is theoretical rather than practical. Each class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by each class are uniform and/or formulaic, and the expense and burden of individual litigation might make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## COUNT I – Declaratory Judgment

62.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 61 as if fully set forth herein.

63.     Plaintiff brings this count on behalf of both Classes and pursuant to the Declaratory

Judgment Act, 28 U.S.C. §2201, *et seq.*

64.    Because Cincinnati Insurance has denied Plaintiff's claim for lost "Business Income" under Policy Number ETD 048 27 80, there is an actual controversy between Cincinnati Insurance and Plaintiff.

65.    At all times relevant hereto, Plaintiff's on-premises dining areas were "property" at the "premises" described in Policy Number ETD 048 27 80's Declarations.

66.    As a result of COVID-19 and Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining), Plaintiff suffered the "direct" and "accidental physical loss" of its on-premises dining areas.

67.    As a result of COVID-19 and Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement), Plaintiff suffered the "direct" and "accidental physical loss" of the property at the Valley Lo Club (the insured "premises").

68.    Plaintiff seeks a declaration by this Court that:

(a)    Plaintiff sustained a "'loss' to property at a 'premises'" described in the "Declarations" as a result of COVID-19, Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining), and/or Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement);

(b)    The "'loss' to property at a 'premises'" described in the "Declarations" caused "the necessary 'suspension' of [Plaintiff's] 'operations;'"

(c)    The "necessary 'suspension' of [Plaintiff's] 'operations'" caused Plaintiff's lost "Business Income;"

(d)    COVID-19 is a "Covered Cause of Loss" under the Building and Personal Property Coverage Form and the Business Income Coverage Form;

(e)    Executive Order 2020-07 (and any subsequent Executive Orders

extending it and/or its prohibition of on-premises dining) is a "Covered Cause of Loss" under the Building and Personal Property Coverage Form and the Business Income Coverage Form; and

(f)     Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement) is a "Covered Cause of Loss" under the Building and Personal Property Coverage Form and the Business Income Coverage Form.

69.     Plaintiff seeks an additional declaration that it is entitled to "Business Income" coverage under the Building and Personal Property Coverage Form and the Business Income Coverage Form.

70.     A declaratory judgment regarding Cincinnati Insurance's obligation to reimburse Plaintiff for the income it lost as a result of COVID-19, Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining), and/or Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement) will terminate the controversy and clarify the respective rights and obligations of the parties under Policy Number ETD 048 27 80.

**COUNT II – Breach of Contract**

71.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 61 as if fully set forth herein.

72.     Plaintiff brings this count on behalf of both Classes.

73.     By purchasing Policy Number ETD 048 27 80, Plaintiff entered into a contract with Cincinnati Insurance.

74.     Under Policy Number ETD 048 27 80's terms, Cincinnati Insurance agreed to "pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." Exhibit A at 33.

75.     Pursuant to the Building and Personal Property Coverage Form, Cincinnati Insurance further agreed to "pay for the actual loss of 'Business Income' … you sustain due to the necessary 'suspension' of your 'operations'" because of "direct 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss." *Id.* at 48.

76.     Pursuant to the Business Income Coverage Form, Cincinnati Insurance agreed to "pay for the actual loss of 'Business Income' you sustain due to the necessary 'suspension' of your 'operations'" because of "direct 'loss' to property at 'premises' which are described in the Declarations … caused by or result[ing] from a Covered Cause of Loss." *Id.* at 126.

77.     As a result of COVID-19 and/or Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining), Plaintiff suffered the "direct" and "accidental physical loss" of its on-premises dining areas.

78.     As a result of COVID-19 and/or Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement), Plaintiff suffered the "direct" and "accidental physical loss" of the property at the Valley Lo Club (the insured "premises").

79.     Thus, Plaintiff sustained a "'loss' to property at a 'premises'" described in the "Declarations" as a result of COVID-19, Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining), and/or Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement).

80.     The foregoing "'loss' to property at a 'premises'" described in the "Declarations" caused "the necessary 'suspension' of [Plaintiff's] 'operations.'"

81.     The "necessary 'suspension' of [Plaintiff's] 'operations'" caused Plaintiff to lose

"Business Income."

82.     Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining) is a "Covered Cause of Loss" under the Building and Personal Property Coverage Form and the Business Income Coverage Form.

83.     Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement) is a "Covered Cause of Loss" under the Building and Personal Property Coverage Form and the Business Income Coverage Form.

84.     COVID-19 is a "Covered Cause of Loss" under the Building and Personal Property Coverage Form and the Business Income Coverage Form.

85.     Pursuant to the terms and conditions of the Building and Personal Property Coverage Form and the Business Income Coverage Form, Plaintiff made a claim for the "Business Income" it lost following Valley Lo Club's COVID-19 exposure and Executive Orders 2020-07 and 2020-10's implementation in Spring 2020.

86.     Cincinnati Insurance denied Plaintiff's "Business Income" claim.

87.     By denying Plaintiff's claim, Cincinnati Insurance breached its contract with Plaintiff.

88.     As a result of Cincinnati Insurance denying Plaintiff's claim, Plaintiff has been prevented from recovering lost "Business Income" pursuant to the terms and conditions of Policy Number ETD 048 27 80, thereby suffering damages.

**Request for Relief**

WHEREFORE, Plaintiff, VALLEY LO CLUB ASSOCIATION, INC., doing business as "VALLEY LO CLUB," demands the following relief on behalf of itself and all others similarly situated:

A.   That an Order be entered certifying this action as a Plaintiff Class action under Federal Rule of Civil Procedure 23;

B.   A declaration by this Court that Plaintiff sustained a "'loss' to property at a 'premises'" described in the "Declarations" as a result of COVID-19, Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining) and/or Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement);

C.   A declaration by this Court that the "'loss' to property at a 'premises'" described in the "Declarations" caused "the necessary 'suspension' of [Plaintiff's] 'operations;'"

D.   A declaration by this Court that the "necessary 'suspension' of [Plaintiff's] 'operations'" caused Plaintiff's lost "Business Income;"

E.   A declaration by this Court that COVID-19, Executive Order 2020-07 (and any subsequent Executive Orders extending it and/or its prohibition of on-premises dining), and Executive Order 2020-10 (and any subsequent Executive Orders extending it and/or its closure of places of public amusement) are "Covered Causes of Loss" under the Building and Personal Property Coverage Form and the Business Income Coverage Form;

F.   A declaration by this Court that Plaintiff is entitled to "Business Income" coverage under Policy Number ETD 048 27 80;

G.   Compensatory damages in such amount as demonstrated by the proofs at trial and that the Court deems just and proper;

H.    Punitive damages as to Counts for which such damages are available under applicable law and in an amount that the Court deems just and proper;

I.    Imposition of a constructive trust, an order granting recessionary and injunctive relief and other such equitable relief that the Court deems just and proper;

J.    An appropriate claims resolution facility, funded by Defendant, to administer relief to the Classes in this case;

K.    Costs of litigation and attorneys' fees; and

L.    All other appropriate relief.


Dated:  August 14, 2020                     Respectfully submitted,

                                            **DUNCAN LAW GROUP, LLC,**

                                            By:___/s/ Robert R. Duncan_____
                                                    Attorney for Plaintiff

                                            Robert R. Duncan (Illinois Bar #6277407)
                                            James H. Podolny (Illinois Bar #6321307)
                                            **DUNCAN LAW GROUP, LLC**
                                            161 North Clark Street, Suite 2550
                                            Chicago, Illinois 60601
                                            Phone: (312) 202-3283
                                            Fax: (312) 202-3284
                                            Email: rrd@duncanlawgroup.com
                                                     jp@duncanlawgroup.com

                                            **ESBROOK LAW, LLC,**

                                            By:___/s/ Christopher J. Esbrook_____
                                                    Attorney for Plaintiff

Christopher J. Esbrook (Illinois Bar #6282829)
Michael Kozlowski (Illinois Bar #6320950)
**ESBROOK LAW, LLC**
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Phone: (312) 319-7680
Email: christopher.esbrook@esbrooklaw.com
          michael.kozlowski@esbrooklaw.com