**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VALLEY LO CLUB ASSOCIATION, INC. d/b/a VALLEY LO CLUB, and all others similarly situated, | |
| Plaintiffs, | No. 20-cv-04790 |
| v. | Judge Franklin U. Valderrama |
| THE CINCINNATI INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

COVID-19, a novel coronavirus, has wreaked havoc on the lives of many and caused untold financial losses. This case is but another in a long line of cases in which businesses seek coverage for their financial losses.

Plaintiff Valley Lo Club Association, Inc. (Valley Lo) owns and operates Valley Lo Club, a country club which consists of an 18-hole golf course and several on-premises restaurants and dining areas (the Club) in Glenview, Illinois. R. 15, FAC ¶¶ 4–5.[1] Valley Lo purchased a commercial property insurance policy from The Cincinnati Insurance Company (Cincinnati). *Id.* ¶ 43. After Valley Lo was forced to suspend or reduce business at the Club due to COVID-19 pandemic and the resultant closure order issued by the Governor of Illinois, it filed a claim with Defendant, who denied coverage. *Id.* ¶¶ 71–72.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Valley Lo filed this class action suit[2] against Cincinnati for breach of contract and declaratory relief. FAC. It seeks damages for loss of business income suffered due to the closure orders. *Id.* ¶¶ 93–112. Cincinnati also seeks a declaratory judgment that the losses incurred are insured losses under its policy. *Id.* ¶¶ 84–92. Before the Court is Cincinnati's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 18, Mot. Dismiss. For the reasons discussed below, the Court grants Cincinnati's Motion to Dismiss. The Court finds that the insurance policy does not provide coverage for Valley Lo's losses.

## Background

Valley Lo owns and operates the Club. FAC ¶¶ 4–5. Cincinnati is an Ohio insurance company, with its principal place of business in Ohio, which issued commercial property and casualty, policy no. ETD 048 27 80 (the Policy), with an effective date of coverage of April 1, 2018. *Id.* ¶¶ 7, 43.

### I. Policy Language

The Policy includes a "Business Income and Extra Expense" coverage, which includes a "Building and Personal Property" coverage. FAC ¶ 46. The Building and Personal Property coverage provides that Cincinnati "will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." FAC, Exh. A (the Policy) at 33. "Covered Causes of Loss" means a "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." *Id.* at 35. "Loss" means "accidental physical loss or accidental physical damage." *Id.* at 68.

---

[2]The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

2

The Policy also includes a Business Income and Extra Expense Coverage whereby Cincinnati:

> will pay for the actual loss of "Business Income" [Valley Lo] sustain[s] due to the necessary "suspension" of [Valley Lo]'s "operations" during the "period of restoration." The "suspension" must be caused by "direct loss to property at a "premises" caused by or resulting from any Covered Cause of Loss."

The Policy at 48. Similarly, Cincinnati:

> will pay for the actual loss of "Business Income" [Valley Lo] sustain[s] due to the necessary "suspension" of [Valley Lo]'s "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

*Id.* at 126.

The Policy also includes a Civil Authority coverage, which extends Valley Lo's Business Income and Extra Expense coverages "to the actual loss of 'Business Income" and necessary Extra Expense [Valley Lo] sustain[s] caused by action of civil authority that prohibits access to the 'premises.'" The Policy at 49. However, two conditions must be satisfied: (a) "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damages; and (b) "[t]he action of action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property." *Id.*

## II. COVID-19 and Closure Orders

On March 15, 2020, Valley Lo was notified that an individual who tested positive for COVID-19 had dined at the Club on March 5, 6, and 7, 2020. FAC ¶ 56. The Club also learned that the individual's immediate family utilized the Club's facilities on March3, 9, 12, and 14, 2020. *Id.* On March 16, 2020, a Club employee working in the pro shop began experiencing COVID-19 symptoms. *Id.* ¶ 60.

On March 16, 2020, in response to the COVID-19 pandemic, the Illinois Governor issued Executive Order 2020-07, which suspended in-person dining and gatherings of 50 or more people. FAC ¶ 34. On March 20, 2020, the Governor issued Executive Order 2020-10, which extended Executive Order 2020-7's suspension of in-person dining and ordered closed all places of public amusement, including country clubs. *Id.* ¶ 35. Through April and May of 2020, the Governor issued additional executive orders extending the prohibition of in-person dining and the closure of country clubs. *Id.* ¶¶ 36–39 (all orders are collectively referred to as the Closure Orders).

In response to Executive Order 2020-07 and the COVID-19 exposure that occurred at the Club, Valley Lo closed the Club, including the restaurant to the public on March 16, 2020. FAC ¶ 61. On April 1, 2020, Valley Lo began offering carry-out lunch and dinner service, but stopped on April 8, 2020, when a member of its culinary staff tested positive for COVID-19. *Id.* ¶¶ 65–66. Valley Lo alleges that is suffered an ongoing loss of business income upon the Club's closure on March 16, 2020, it incurred expenses to disinfect its property, and incurred expenses to disinfect the Club

4

following the April 8, 2020 culinary staff member's COVID-19 diagnosis. *Id.* ¶¶ 62–63, 69. On or about April 8, 2020, Valley Lo filed a claim with Cincinnati regarding its lost business income and COVID-19 related expenses, which Cincinnati denied. *Id.* ¶¶ 71–72.

Valley Lo then filed its Complaint for declaratory relief (Count I) and breach of contract (Count II), individually and on behalf of a class consisting of Cincinnati policy holders who made claims to Cincinnati for COVID-19 related losses and whose claims were denied by Cincinnati. Cincinnati now moves to dismiss the Complaint pursuant to Rule 12(b)(6).

## Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The

5

allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. Choice of Law

At the outset, the Court must address a choice-of-law issue. Apparently, the Policy does not contain a choice-of-law provision as no party directs the Court to any such clause. That said, neither party articulates what law governs, although both parties cite Illinois law in their respective briefs. R. 19, Memo. Dismiss; R. 23, Resp.

"Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (internal citations omitted). As the Court sits in Illinois, it looks to Illinois' choice of law rules. Under Illinois law, in the absence of an express choice of law provision in an insurance policy, courts apply the "most significant contacts" test. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). The factors considered under the "most significant contacts" test are: "the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Id.* (international citation omitted). Courts give special emphasis to the location of the insured risk. *Id.*

Courts, however, "forego [a] choice of law analysis when the parties agree on the law that governs a dispute and there is a reasonable relation between the dispute and the forum whose law has been selected." *Home Valu, Inc., v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000) (internal citation omitted). Here, Illinois has the most significant contacts in this dispute. And no party contests the application of Illinois law. Therefore, the Court finds that Illinois substantive law governs the coverage dispute. *See Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995)).

## II. Contract Interpretation

The standard rules of contract interpretation apply to insurance policies—the "primary objective is to ascertain and give effect to the intent of the parties, as expressed in the policy language." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777–78 (7th Cir. 2015) (internal quotation and citations omitted). "[I]f the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010) (internal quotation and citation omitted). However, a policy provision is not ambiguous solely because the parties disagree about its interpretation. *Founders Ins. Co., v. Munoz*, 930 N.E. 2d 999, 1004 (Ill. 2010).

Under Illinois law, the insured bears the initial burden of demonstrating the existence of a claim that falls within the coverage provided by the policy. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009). If the insured establishes that its claim is

7

covered by the policy, the burden shifts to the insurer to demonstrate that a limitation or exclusion applies. *Id.*

### III. Business Income and Extra Expense Coverage

Valley Lo asserts under both counts that it is entitled to coverage under the Policy's Business Income and Extra Expense coverage due to the losses incurred as a result of the Closure Orders. FAC ¶¶ 86, 91, 97–99, 108–112.

Cincinnati argues that Valley Lo's claims based on the Policy's Business Income and Extra Expense coverage fail because the Policy does not cover Valley Lo's' alleged losses. Memo. Dismiss at 6–10. Cincinnati contends that coverage "applies only if there has been a direct physical loss or damage to property." *Id.* at 6. According to Cincinnati, Valley Lo fails to allege "any distinct, demonstrable, physical alteration of property at its premises." *Id.* at 7. Rather, notes Cincinnati, Valley Lo merely alleges that it sustained physical loss to its property because there were two individuals at the premises who tested positive for COVID-19 and that civil authority orders impacted its operations. *Id.* Cincinnati insists that "physical loss" and "physical damage" to property require a physical alteration of property at Valley Lo's premises, which Valley Lo fails to allege. *Id.* at 7–8. It also asserts Valley Lo's "loss consists entirely of the economic impact of COVID-19 on its business not because of direct physical loss to property, but because it complied with social distancing requirements." *Id.* at 6.

As for Valley's Lo allegations regarding the presence of the virus on its premises, Cincinnati posits that no Illinois authority has found that the presence of

8

the virus constitutes direct physical loss to property. Memo. Dismiss at 6–7. To the contrary, observes Cincinnati, courts have rejected Valley Lo's position. *Id.* at 7–10 (citing *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 488 F. Supp. 3d 690 (N.D. Ill. 2020) and other cases).

Not surprisingly, Valley Lo disagrees with Cincinnati's interpretation of the Policy. Valley Lo responds that it adequately alleges a direct accidental physical loss to property at its premises. Resp. at 10. The Policy does not define the phrases "accidental physical loss" or "accidental physical damage", but applying dictionary definitions of "accidental", "physical", and "loss", Valley Lo asserts that the plain and ordinary meaning of "accidental physical loss" to property encompasses: "the sudden inability to use property as a result of physical forces acting on that property" and/or "the sudden disappearance or diminution of property's value as a result of physical forces acting on that property." *Id.* at 10–12. Thus, an insured, reasons Valley Lo, suffers "accidental physical loss" to property when "toxic substances and/or disease-causing agents unexpectedly contaminate the property, thereby rendering it unusable or uninhabitable for safety reasons." *Id.* at 12 (citing *Studio 417, Inc. v. The Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020) and other cases).

Valley Lo notes that Illinois courts have held that insureds suffered "physical loss or damage to" property when toxic substances and/or disease-causing agents contaminate the property. Resp. at 14 (citing *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.*, 720 N.E.2d 622 (Ill. App. Ct. 1999)). Valley Lo contends that Cincinnati's cases are distinguishable. For example, in neither *Sandy Point Dental,*

9

*PC*, 488 F. Supp. 3d 690, nor *It's Nice, Inc. v. State Farm Fire and Cas. Co.*, No. 2020L000547 (Ill. Cir. Ct. Sept. 29, 2010), did the plaintiffs allege on-premises COVID-19 contamination. *Id.* at 16.

Alternatively, Valley Lo posits that the Court deny Cincinnati's motion to dismiss because the Policy is ambiguous. Resp. at 20–21. While arguably Cincinnati has advanced one reasonable interpretation of the coverage provisions at issue, Valley Lo's interpretation of said provisions is also reasonable, and, accordingly, Valley Lo submits the Policy is ambiguous. *Id.*

The Court begins its analysis as it must, with the Policy. The Policy provides coverage for a direct "loss," and defines "loss" as "accidental physical loss or accidental physical damage." The Policy at 33, 68. Valley Lo argues that under the Policy, coverage is triggered when, as the insured, Valley Lo incurs a direct physical loss to property. *See* Resp. The Court agrees. However, the Policy does not define "accidental physical loss" or "accidental physical damage." No matter, as the Court may resort to dictionary definitions to ascertain the plain and ordinary meaning of words. *See Drs. Direct Ins., Inc. v. Bochenek*, 38 N.E.3d 116, 124 (Ill. App. Ct. 2015) ("Where a term in an insurance policy is not defined, we afford that term its plain, ordinary, and popular meaning—that is, we look to its dictionary definition."). Moreover, an insurance policy, like any contract, "is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006) (internal citation omitted). With these basic principles in

mind, the Court notes that in the Policy, the terms "loss" and "damage" are modified by the words "direct", "accidental", and "physical." The Policy at 33, 68. "Direct" is self-explanatory. "Accidental" means "[n]ot having occurred as a result of anyone's purposeful act; esp., resulting from an event that could not have been prevented by human skill or reasonable foresight." *Accidental*, Black's Law Dictionary (11th ed. 2019). "Physical" means "of, relating to, or involving material things; pertaining to real, tangible objects." *Id.* at *Physical*. Accordingly, any "loss" or "damage" must be direct, accidental, and physical.

Furthermore, "loss" seemingly cannot mean the same thing as "damage." *See Valley Forge Ins. Co.*, 860 N.E.2d at 314. "Loss" means "the failure to maintain possession of a thing." *Loss*, Black's Law Dictionary (11th ed. 2019). But "damage" means "[l]oss or injury to person or property; esp., physical harm that is done to something or to part of someone's body." *Id.* at *Damage*. It is clear that any "direct accidental physical damage" must be a *physical* harm. And, applying the plain and ordinary meaning of the phrase "direct accidental physical loss," the Court finds that the Policy require some form of actual physical damage to the insured property to trigger coverage.

In *Park Place Hosp., LLC v. Cont'l Ins. Co.*, 2021 WL 3549770, at *4 (N.D. Ill. Aug. 10, 2021), a court in this District explained the different between "loss" and "damage" and agreed that "the plain wording of the phrase requires either a permanent disposition of the property due to a physical change ('loss'), or physical injury to the property requiring repair ('damage')." (internal quotation and citation

11

omitted). And the court disagreed with the insured that the policy's language permitted a conclusion that "physical loss" included "loss of use of the property without any tangible or concrete loss." *Id.* It joined the majority of courts to hold that "physical loss" or "physical damage" requires a concrete or tangible loss or damage. *Id.* The Court joins this majority and agrees.[3] To conclude otherwise is to ignore the plain meaning of the Policy.

The remaining language in the Policy supports this position. Under the Policy, an insured must sustain an actual loss of income due to a necessary suspension of its property during the period of restoration. The period of restoration per the Policy ends on the earlier of: (i) "[t]he date when the property at the 'premises' should be repaired, rebuilt or replaced with reasonable speed or similar quality;" or (ii) "[t]he date when business is resumed at a new permanent location." The Policy at 68–69. Clearly the Policy contemplates that the insured's property would need to be repaired, rebuilt, or replaced due to the "direct accidental physical loss." And this language "unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage." *Sandy Point Dental, PC*, 488 F. Supp. 3d at 693; *see*

---

[3]The Court notes that, after briefing on Cincinnati's motion was complete, two other courts in this District reached the opposite conclusion, which is the minority view in this District. *See In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729 (N.D. Ill. 2021); *Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 457 (N.D. Ill. 2021). Valley Lo never filed motions for leave to file supplemental authority to bring these decisions to the Court's attention. No matter, as the Court finds the reasoning of the majority view more persuasive.

12

*also Bend Hotel Dev. Co., LLC v. Cincinnati Ins. Co.*, 515 F. Supp. 3d 854, 858 (N.D. Ill. 2021).

Valley Lo leans heavily on *Studio 417, Inc. v. The Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), among other cases, for support that the coronavirus may cause a physical loss to property warranting coverage. Resp. at 12–14. None of the cases cited by Valley Lo, however, applied Illinois law. Instead, those courts applied the law of other states to conclude that as interpreted by those state courts, it was at least possible to construe the policy language regarding physical loss of to allow coverage even absent a physical alteration if the space was unusable. However, the Court finds the reasoning employed by a majority of the courts applying Illinois law to have considered the issue more persuasive. *See Sandy Point Dental, PC*, 488 F. Supp. 3d at 693; *Bend Hotel Dev. Co., LLC*, 515 F. Supp. 3d 854 at 858; *T & E Chi. LLC v. Cincinnati Ins. Co.*, 501 F.Supp.3d 647, 651–52, (N.D. Ill. 2020).

Valley Lo's attempt to read ambiguity into the Policy based on its alleged interpretation is unconvincing. *See* Resp. at 20–21. The Court finds Valley Lo's interpretation unreasonable, and just because Valley Lo and Cincinnati disagree about the interpretation of the Policy does not render it ambiguous. *See Founders Ins. Co.*, 930 N.E. 2d at 1004.

The Court, having found that Business Income requires direct physical loss or direct physical damage to property, turns to the Complaint. Valley Lo owns and operates a country club which consists of among other things, an 18-hole golf course, a fitness center, and several on-site restaurants. FAC ¶¶ 4–5. It alleges that it was

13

required to close after the Governor of Illinois issued the Closure Orders barring on-site services for restaurants and ordering closed all country clubs or social clubs to the public. *Id.* ¶¶ 35, 40. An individual who dined at the Club in March 2020 later tested positive for COVID-19 and "shed COVID-19 droplets and/or airborne particles" while at the Club. *Id.* ¶¶ 56–57. Valley Lo alleges that due to COVID-19 and the Closure Orders, it suffered the "direct" and "accidental physical loss or accidental physical damage" to its on-premises dining areas. *Id.* ¶¶ 88–89, 100-101.

Notably, nowhere in the Complaint does Valley Lo allege that any of its property suffered any *direct accidental physical loss or direct accidental physical damage*, a physical alteration to its property, or any loss or damage that was tangible or concrete. Instead, Valley Lo alleges that the March 2020 individual's COVID-19 droplets transformed the air of the Club and landed on its objects and surfaces. FAC ¶ 58. This does not translate into a physical alteration, or a tangible or concrete loss or damage.

The cases cited by Valley Lo are distinguishable. In *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E. 2d 926, 931 (Ill. 1991), asbestos-containing products had been installed in the insured's property which required removal to render the property safe again. Similarly, in *Bd. of Educ. of Twp. High Sch. Dist. No. 211*, 720 N.E.2d at 623, the insured was attempting to have asbestos-containing building materials removed from its buildings. Valley Lo's attempt to equate asbestos fibers

14

and COVID-19 seem similar falls flat, and it cites no authority in which a court has addressed their effect and contamination effect similarly.

Valley Lo also suggests that the COVID-19 droplets at its property rendered the Club dangerous or unsafe and unfit for its intended purpose as a restaurant and country club, thus triggering coverage. Resp. at 5. The Court disagrees. Other courts in this District have soundly rejected the argument that a partial loss to properties from loss of use constitutes "direct physical loss" to trigger such coverage. *See Sandy Point Dental, PC*, 488 F. Supp. 3d at 693.

The Court finds, in viewing the allegations of the Complaint in the light most favorable to Valley Lo, the non-movant, and drawing all reasonable inferences in its favor, that Valley Lo fails to state a cause of action for breach of contract and declaratory relief regarding the Business Income and Extra Expense provision.

### IV. Civil Authority Coverage

Valley Lo also seeks coverage the Policy's Civil Authority provision. FAC ¶¶ 34–40, 88–89, 100–01. Cincinnati argues that civil authority coverage is only triggered where there is direct physical loss to property other than the insured's property and access to the insured's property is prohibited due to a direct physical loss. Memo. Dismiss at 13–15. Cincinnati contends that Valley Lo fails to allege that direct physical loss was present at other property, or the Closure Orders prohibited access to the Club, both required by the Policy. *Id.* at 13–14.

The Court agrees that Valley Lo fails to allege coverage under the Civil Authority provision. First, the Complaint fails to allege any damage to other property.

This failure is fatal to the Complaint. *See Sandy Point Dental, PC*, 488 F. Supp. 3d at 694 (finding that the civil authority coverage does not apply because "the complaint has not (and likely could not) allege that the coronavirus caused direct physical loss to other property"). Second, the Complaint fails to allege that access to the Club was denied. True, the effect of the Closure Orders was to restrict access by the public to the Club. However, imposing limitations on operations is not the same as prohibiting access to the Club.

The Court finds, again, in viewing the allegations of the Complaint in the light most favorable to Valley Lo, the non-movant, and drawing all reasonable inferences in its favor, that Valley Lo fails to state a cause of action for breach of contract and declaratory relief regarding for coverage under the Policy's Civil Authority provision.

## Conclusion

For the reasons given above, the Court grants Cincinnati's Motion to Dismiss [18]. Even though the Court does not see how Valley Lo could cure the deficiencies in its first amended complaint, the Court will provide it one opportunity to attempt to amend its claims. Therefore, the Court dismisses Valley Lo's first amended complaint without prejudice and directs Valley Lo, if it so chooses, to file an amended complaint by 10/21/2021. If Valley Lo does not file an amended complaint, this dismissal will automatically convert to a dismissal with prejudice, and the Court will enter judgment accordingly.

Dated: September 30, 2021

United States District Judge
Franklin U. Valderrama

16