**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VALLEY LO CLUB ASSOCIATION, INC. d/b/a VALLEY LO CLUB, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>Defendants. | No. 20-cv-04790<br>Judge Franklin U. Valderrama |

### ORDER

After suffering losses due to government closure orders designed to slow the spread of COVID-19, Plaintiff Valley Lo Club Association, Inc. (Valley Lo) filed a claim with its insurer, Defendant The Cincinnati Insurance Company (Cincinnati). Cincinnati denied the claim, and Valley Lo filed this putative class action against Cincinnati, asserting claims for declaratory relief and breach of contract. R. 1, Compl.[1] Cincinnati now moves to dismiss the Second Amended Complaint (SAC), R. 50, under Federal Rule of Civil Procedure 12(b)(6). R. 51, Mot. Dismiss. For the reasons below, the Court grants Cincinnati's motion and dismisses the SAC with prejudice.

---

[1] Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

1

## Background[2]

Valley Lo owns and operates a country club (the Club) located in Glenview, Illinois. SAC ¶ 4. The Club has an 18-hole golf course and several on-premises restaurants and dining areas. *Id.* ¶¶ 5–6. In 2018, Valley Lo purchased a commercial property and casualty insurance policy from Cincinnati. SAC, Exh. B (the Policy). The Policy has an assigned number of ETD 048 27 80 and an effective date of April 1, 2018. SAC ¶ 44. The Policy includes "Building and Personal Property" coverage as well as "Business Income and Extra Expense" coverage. *Id.* ¶ 47. The Building and Personal Property coverage provides that Cincinnati will "pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." Policy at 33. "Covered Causes of Loss," according to the Policy, means a "direct 'loss' unless the 'loss' is excluded or limited in the Coverage Part." *Id.* at 35. "Loss" means "accidental physical loss or accidental physical damage." *Id.* at 68.

The Policy also includes a Business Income and Extra Expense Coverage whereby Cincinnati:

> will pay for the actual loss of "Business Income" [Valley Lo] sustain[s] due to the necessary "suspension" of [Valley Lo]'s "operations" during the "period of restoration." The "suspension" must be caused by "direct loss to property at a "premises" caused by or resulting from any Covered Cause of Loss.

Policy at 48. Similarly, Cincinnati agreed to:

> pay for the actual loss of "Business Income" [Valley Lo] sustain[s] due to the necessary "suspension" of [Valley Lo]'s "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business

---

[2]The Court accepts as true all of the well-pleaded facts in the SAC and draws all reasonable inferences in favor of Valley Lo. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

2

> Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

*Id.* at 126.

The Policy also includes a Fungi, Wet Rot, Dry Rot, and Bacteria-Limited Coverage provision, which extends Valley Lo's coverage. Policy at 53. This coverage is activated when fungi, wet or dry rot, or bacteria is the result of a "Covered Cause of Loss." *Id.*

On March 15, 2020, Valley Lo was notified that an individual who tested positive for COVID-19 dined at the Club on March 5, 6 and 7, 2020, and that his immediate family used the Club's facilities on March 3, 9, 12, and 14, 2020. SAC ¶ 57. On March 16, 2020, a Valley Lo employee working in the pro shop began experiencing COVID-19 symptoms. *Id.* ¶ 61.

On March 16, 2020, Illinois Governor J.B. Pritzker issued Executive Order 2020-07 in response to the COVID-19 pandemic. SAC ¶ 34. Executive Order 2020-07 suspended on-premises consumption and prohibited gatherings of fifty or more people. *Id.* On March 20, 2020, Governor Pritzker issued Executive Order 2020-10, which extended Executive Order 2020-07's prohibition of on-premises dining and ordered "country clubs or social clubs" to close to the public. *Id.* ¶ 35. Governor Pritzker continued to issue orders that extended Executive Order 2020-07 through April and May 2020. *Id.* ¶¶ 36–39 (collectively, Closure Orders).

On March 16, 2020, Valley Lo closed the Club to the public in response to the Closure Orders and the COVID-19 exposure at the Club. SAC ¶ 62. On April 1, 2020 Valley Lo began offering limited carry-out services, but ceased operations on April 8,

3

2020 when a member of the Club's culinary staff tested positive for COVID-19. *Id.* ¶¶ 66–67. Valley Lo alleges it suffered a loss of business income when it initially closed and when it ceased carry-out services. *Id.* ¶¶ 63, 71. Valley Lo also alleges it incurred expenses to disinfect the Club in March when it closed the Club, and after the culinary staff member tested positive for COVID-19. *Id.* ¶¶ 64, 70. On or about April 8, 2020, Valley Lo filed a claim regarding its lost business income and COVID-19-related expenses. *Id.* ¶ 72. On or about May 27, 2020, Cincinnati denied coverage. *Id.* ¶ 73.

Valley Lo filed a complaint on August 14, 2020 against Cincinnati and amended its complaint on October 20, 2020. R. 15. On September 30, 2021, the Court granted Cincinnati's motion to dismiss the first amended complaint, finding that Valley Lo failed to state a cause of action because the complaint failed to allege direct physical loss of or damage to property as required by the Policy. R. 49, Opinion. In granting the motion to dismiss, the Court afforded Valley Lo one more pleading attempt but noted its doubt that Valley Lo would be able to cure the deficiencies from the first amended complaint. *Id.* at 16. Valley Lo subsequently filed the SAC, again seeking damages for its losses due to the Closure Orders. Cincinnati's motion to dismiss the SAC is now before the Court.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3D 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint need only factual

4

allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

At the core of this dispute is whether Valley Lo's Coronavirus-related economic loss constitutes a "direct physical loss or damage to property" under the Policy.

When interpreting an insurance policy, the standard rules of contract interpretation apply—the "primary objective is to ascertain and give effect to the intent of the parties, as expressed in the policy language." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777–78 (7th Cir. 2015) (internal quotation and citations omitted). Here, the parties agree that the Policy is governed by Illinois. Under Illinois law, the construction of an insurance policy is a question of law. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E. 2d 338, 342 (Ill. 2006). "[I]f the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010) (internal quotation and citation omitted). However, a policy provision is not ambiguous solely because the parties disagree

about its interpretation. *Founders Ins. Co., v. Munoz*, 930 N.E. 2d 999, 1004 (Ill. 2010).

Cincinnati moves to dismiss the SAC, arguing that the amended pleading does not cure any of the deficiencies in the earlier pleading. R. 52, Memo. Dismiss at 1. Specifically, the SAC continues to plead COVID-19-related economic loss, rather than direct physical loss, so the Policy does not cover Valley Lo's claims. *Id.* at 5. Valley Lo counters that it did suffer a direct physical loss and largely recycles its policy interpretation arguments from the previous round of briefing.[3] R. 58, Resp. In addition, Valley Lo directs the Court to the Policy's "Fungi, Wet Rot, Dry Rot, and Bacteria – Limited Coverage," and argues that "If bacteria and "scents . . . released by fungi" can cause "accidental physical loss or accidental physical damage" to property, it is difficult, if not impossible, to understand why deadly virus particles could not." *Id.* at 15. The Court addresses the direct physical loss question generally and then turns to Valley Lo's "Fungi, Wet Rot, Dry Rot, and Bacteria – Limited Coverage" argument.

### I. Direct Physical Loss or Damage to Property

Cincinnati argues that the plain language of the Policy requires "direct physical loss or damage" to property. Memo. Dismiss at 5. The SAC, according to Cincinnati, fails to allege that the presence of the virus resulted in direct physical loss to Valley Lo's property beyond the unsupported allegation that the presence of

---

[3]Because the Court has already rejected these arguments, *see Valley Lo Club Ass'n, Inc. v. Cincinnati Ins. Co.*, 2021 WL 4477892 (N.D. Ill. Sept. 30, 2021), the Court does not address the arguments here.

6

the Coronavirus transforms the air in the premises. *Id.* at 6. In support, Cincinnati directs the Court to the Seventh Circuit's recent decision in *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021). R. 61, Reply at 1–5.[4] Cincinnati avers that *Sandy Point* is dispositive of the motion to dismiss. The Court agrees.

In *Sandy Point*, a consolidated opinion, the plaintiffs were three businesses who were required to close or dramatically scale back their business operations as a result of Governor Pritzker's closure orders. 20 F.4th at 329. The plaintiffs all had Cincinnati insurance policies, which provided coverage for income loss on account of a suspension of operations caused by "direct physical loss" to covered property. *Id.* The businesses filed claims for coverage under their respective policies, Cincinnati denied the claims, and litigation ensued. *Id.* The district courts dismissed the complaints, finding that the plaintiffs had failed to adequately allege that either the virus that causes COVID-19 or the resulting closure orders caused "direct physical loss to property." *Id.* The Seventh Circuit, applying Illinois law, affirmed the dismissals, and in doing so, joined four other circuits in concluding that the mere loss of use, "unaccompanied by any physical alteration to property," does not constitute "direct physical loss" under the relevant insurance policies. *Id.* at 329–30.[5] The

---

[4]While *Sandy Point* was issued after Cincinnati filed its motion to dismiss and first raised in Cincinnati's Reply, Valley Lo did not seek leave to file a sur-response to address *Sandy Point*.

[5]*Sandy Point* is in line with the supplemental authority raised by Cincinnati, *see* R. 62, R. 64, as well as other recent Seventh Circuit opinions. *See ABC Diamonds Inc. v. Hartford Casualty Ins. Co.*, 2022 WL 1830692, at *1 (7th Cir. June 3, 2022) (holding that mere loss of use due to COVID-related closures does not constitute 'direct physical loss' when unaccompanied by any physical alteration to the property); *Windy City Limousine Co., LLC*

7

Seventh Circuit reasoned that while the impact of COVID-19 virus "can hardly be overstated," the impact of the virus on physical property is "inconsequential"; "deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days." *Id.* at 335.

The Policy before the Court now and those in *Sandy Point* are materially indistinguishable. Therefore, *Sandy Point controls disposition of the motion to dismiss.* The Policy in this case, like the insurance policies in *Sandy Point* requires a physical alteration to the property. *Id.* Valley Lo fails to allege any physical alteration of the property, so there is no coverage under the Policy.

**II. Fungi, Wet Rot, Dry Rot and Bacteria Coverage**

Valley Lo's only substantive amendment to the previous pleading was the addition of an allegation regarding the "Fungi, Wet Rot, Dry Rot, and Bacteria – Limited Coverage" provision of the Policy. Valley Lo argues that the limited coverage provision demonstrates that Cincinnati intended to cover the COVID-19 related economic losses that Valley Lo suffered. Resp. at 21–22.

Cincinnati argues that Valley Lo's coverage claim under the Fungi, Wet Rot, Dry Rot and Bactria provision also fails, because coverage under that provision also

---

*v. Cincinnati Fin. Corp.*, No. 21-3296, 2022 WL 1965903, at *1 (7th Cir. June 6, 2022) (holding that the presence of the COVID-19 virus is not sufficient to constitute physical loss); *Green Beginnings, LLC v. W. Bend Mut. Ins. Co.*, No. 21-2186, 2022 WL 1700139, at *1 (7th Cir. May 27, 2022) (affirming judgment of district court that COVID did not cause plaintiff to suffer "direct physical loss," and that the COVID-related shutdown orders did not trigger coverage under the policy's communicable disease provision); *Melcorp Inc. v. West Americans Inc. Co.*, No. 21-2448, 2022 WL 2068256, at *2, *3 (7th Cir. June 8, 2022) (affirming the district court's decision that plaintiff failed to allege either physical alteration or complete dispossession).

requires a direct physical loss. Reply at 12–13. The Court agrees because the Policy states that the Fungi provision only applies when fungi is the result of a "Covered Cause of Loss," and the definition of "loss," requires a physical alteration, as *Sandy Point* makes clear. Valley Lo has not alleged such a physical alteration. Therefore, because Valley Lo has not alleged any physical loss of or damage to its property, the Policy does not provide coverage for the losses it suffered due to the government closure orders.

## Conclusion

For the reasons given above, the Court grants Cincinnati's Motion to Dismiss [51]. Given this is Valley Lo's third pleading attempt, the dismissal is with prejudice. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818–19 (7th Cir. 2013) (affirming dismissal with prejudice of third pleading attempt because "in court, as in baseball, three strikes and you're out"); *see also Ruiz v. Kinsella*, 770 F. Supp. 2d 936, 943 (N.D. Ill. 2011). Moreover, the Court "can discern no amendment that will cure the flaws in those claims." *Id.* (citing *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018). This civil case is terminated.

Dated: July 5, 2022

_Franklin Val_
Franklin U. Valderrama
United States District Judge